# EXHIBIT B

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
***(SOLO PARA USO DE LA CORTE)***

**Electronically FILED by Superior Court of California, County of Los Angeles 6/05/2023 3:02 PM David W. Slayton, Executive Officer/Clerk of Court, By D. Williams, Deputy Clerk**

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
TRITON PACIFIC CAPITAL PARTNERS, LLC, a California limited liability company, JOSEPH DAVIS, an individual, and DOES 1-10.

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
OLGA OVODENKO, an individual, OLD CITY SECURITIES, LLC, a New York limited liability company

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

***¡AVISO!*** *Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Los Angeles Superior Court
111 North Hill St, Los Angeles, California 90012

CASE NUMBER:
*(Número del Caso):*
23STCV12880

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
The Vora Law Firm, P.C., Jeffrey A. Atteberry, 201 Santa Monica Blvd., Suite 300, Santa Monica, CA 90401 (424) 258-5190

DATE: *(Fecha)* 06/05/2023 Clerk, by *(Secretario)* David W. Slayton, Executive Officer/Clerk of Court D. Williams, Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]



**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

under:
- ☐ CCP 416.10 (corporation)
- ☐ CCP 416.20 (defunct corporation)
- ☐ CCP 416.40 (association or partnership)
- ☐ other *(specify):*
- ☐ CCP 416.60 (minor)
- ☐ CCP 416.70 (conservatee)
- ☐ CCP 416.90 (authorized person)

4. ☐ by personal delivery on *(date)*:



**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

Print this form | Save this form | Clear this form

**The Vora Law Firm, P.C.**
Nilay U. Vora (SBN 268339)
nvora@voralaw.com
Jeffrey A. Atteberry (SBN 266728)
jatteberry@voralaw.com
Lou Egerton-Wiley (SBN 323482)
lou@voralaw.com
201 Santa Monica Blvd., Ste. 300
Santa Monica, California 90401
Tel. (424) 258-5190
*Attorneys for Olga Ovodenko and Old City Securities, LLC*

**Electronically FILED by Superior Court of California, County of Los Angeles 6/05/2023 3:02 PM David W. Slayton, Executive Officer/Clerk of Court, By D. Williams, Deputy Clerk**

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY LOS ANGELES**

| | |
|---|---|
| OLGA OVODENKO, an individual, OLD CITY SECURITIES LLC, a New York limited liability company,<br><br>PLAINTIFFS,<br><br>v.<br><br>TRITON PACIFIC CAPITAL PARTNERS, LLC, a California limited liability company, JOSEPH DAVIS, an individual, and DOES 1-10.<br><br>DEFENDANTS. | Case No. 23STCV12880<br><br>COMPLAINT FOR DAMAGES<br><br>1. Breach of Contract<br>2. Breach of Implied-in-Fact Contract<br>3. Fraudulent Inducement [False Promise]<br>4. Intentional Misrepresentation<br>5. Negligent Misrepresentation<br>6. Unjust Enrichment<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiffs Olga Ovodenko ("Ms. Ovodenko") and Old City Securities LLC ("Old City") (collectively, "Plaintiffs") complain against Defendants Triton Pacific Capital Partners, LLC ("Triton"), Joseph Davis, and Does 1-10 (collectively, "Defendants") and allege as follows.

## INTRODUCTION

1. For five years, Plaintiff Olga Ovodenko worked tirelessly in support of her client Defendant Triton Pacific Capital Partners, LLC. Ms. Ovodenko runs a small business focused on introducing investors to asset managers. Triton is a private equity firm with a significant focus on healthcare. Defendant Joseph Davis, who is a managing director at Triton, hired Ms. Ovodenko through her broker Old City to assist Triton by marketing its investment opportunities and raising capital for them.

2. Ms. Ovodenko's services were provided to Triton under a Placement Agreement with Old City starting in 2018. While the Placement Agreement had a stated period of 24 months, none of the parties to the agreement ever invoked its termination until Triton decided not to pay Ms. Ovodenko for her services. Instead, between 2020 and January 2023, all of the parties conducted themselves exactly as they had from the beginning of the relationship, and each side continued perform their obligations under the Placement Agreement. Following requests from Mr. Davis, Ms. Ovodenko introduced Triton to literally hundreds of investors and generally promoted its investments according to the directions that she received from Triton. For its part, Triton even paid Ms. Ovodenko in accordance with the payment terms in the Placement Agreement on a small transaction that funded during this period.

3. Given Mr. Davis' and Triton's conduct, Ms. Ovodenko and Old City reasonably believed that Ms. Ovodenko's services were being provided under the same terms as those set forth in the Placement Agreement and that she and Old City would be appropriately compensated. However, as subsequent developments revealed, Mr. Davis falsely led Ms. Ovodenko and Old City into this belief. While Mr. Davis and Triton continued to request Ms. Ovodenko's services, they had no intention of paying her or Old City the full amount they rightfully expected when the time would come to make any significant payment.

4. That time came in early January 2023, when Triton closed and funded a sizeable

transaction. At least three investors that Ms. Ovodenko had introduced to Triton contributed to the capital used to fund the deal. But, rather than pay Ms. Ovodenko and Old City the full amount due under the Placement Agreement, Mr. Davis and Triton declared they would only pay a small fraction of the payment.

5. Ms. Ovodenko and Old City now bring this action as a result of the wrongful conduct of Triton and Mr. Davis and seeks compensatory and punitive damages for Triton's willful and deceitful conduct.

**PARTIES**

6. Plaintiff Olga Ovodenko is a resident of Hollywood, Florida. She is an experienced finance professional with over eighteen years of experience who sources investment opportunities and raises debt, equity, funds and other types of capital/assets. At all relevant times, Ms. Ovodenko was and continues to be a registered representative with Old City Securities, LLC, a duly registered FINRA member broker dealer.

7. Plaintiff Old City Securities LLC ("Old City") is a New York limited liability company that has its primary place of business in New York City.

8. Defendant Triton Pacific Capital Partners LLC ("Triton") is, on information and belief, a California limited liability company that has its primary place of business at 6701 Center Drive West, Suite 1450, Los Angeles, California 90045. In perpetrating the misdeeds complained of herein, Triton acted in the County of Los Angeles, California.

9. Defendant Joseph Davis is a Managing Partner of Defendant Triton Pacific Capital Partners, LLC. On information and belief, Joseph Davis is a resident of Orange County, California.

10. The true names and capacities of Defendants sued herein as Does 1 through 10, inclusive, are unknown to Plaintiffs who, therefore, sues such Defendants by said fictitious names. Plaintiffs alleges that each fictitiously named Defendant acted or failed to act in a manner that each has contributed to or proximately caused Plaintiffs' damages claimed herein. Upon ascertaining their true identity, Plaintiffs will amend this Complaint to substitute the true name of any Defendants fictitiously named herein. "Defendants", when so identified herein, references all

Defendants, including those fictitiously named.

11. Plaintiffs are informed and believe, and thereupon allege that at all times relevant to the facts hereinafter alleged, each Defendant was the owner, agent, alter ego, employee, or employer of each of its co-defendants, and in doing the acts hereinafter alleged, the Defendant was acting within the scope of that ownership, agency, or employment, and with the consent and permission of their co-defendants, and each of them, and that said acts were ratified by said Defendant's co-defendants, and each of them.

## JURISDICTION AND VENUE

12. Defendant Triton is subject to personal jurisdiction in California as a limited liability company organized and existing under the laws of the State of California and having its principal place of business therein.

13. Defendant Joseph Davis is subject to personal jurisdiction in California as a resident of Orange County, California.

14. Venue is proper in Los Angeles County Superior Court pursuant to Cal. Civ. Proc. Code § 395 and 395.5 because (i) Triton has its principal place of business in this County, (ii) the contract at issue was formed in this County, and (iii) the contract has a venue provision in which the parties to the contract agreed to venue in this County. (*See* Exhibit A, Section (m) of the Placement Agreement.)

15. The damages sought by Plaintiff exceed $25,000 and, therefore, qualifies as an unlimited civil case.

## GENERAL ALLEGATIONS

### Ms. Ovodenko's Relationship with Old City

16. Olga Ovodenko is an experienced finance professional with over eighteen years of experience who sources investment opportunities for asset managers.

17. Since 2016, Olga Ovodenko has been a registered representative with Old City, a duly registered FINRA member broker dealer. The terms of Ms. Ovodenko's relationship with Old City are set forth in a Memorandum of Understanding between Ms. Ovodenko and Old City. Under the terms of their agreement, Ms. Ovodenko is paid 90% of the revenue that Old City

receives as a result of her activities.

**The Placement Agreement**

18. In 2017, Ms. Ovodenko met Defendant Joseph Davis, a managing partner of Defendant Triton, at a conference in Los Angeles. Triton is a private equity firm with a specialized focus on sourcing, acquiring, and managing healthcare investments. Mr. Davis runs Triton's healthcare practice. Shortly after meeting, Ms. Ovodenko and Mr. Davis began discussing ways in which Ms. Ovodenko could assist Triton in its fundraising efforts for its various healthcare investments.

19. Triton decided to engage Ms. Ovodenko and, to do so, entered into a Placement Agreement with Old City, as her brokerage firm. On January 25, 2018, Old City entered into a Placement Agreement with Triton. A true and correct copy of the Placement Agreement is attached to this Complaint as **Exhibit A** and incorporated herein by reference.

20. While the parties negotiated the agreement, Triton took the lead in drafting its actual terms.

21. The Placement Agreement expressly recognizes Ms. Ovodenko by name as the individual "primarily responsible" for performing the contracted services. (Exhibit A, Section a(ix) of the Placement Agreement.). Thus, both Triton and Old City understood that the primary beneficiary of the Placement Agreement was Ms. Ovodenko.

22. Under the terms of the Placement Agreement, Triton engaged Ms. Ovodenko

> "to introduce investors and joint venture partners to Triton Pacific for the purpose of enabling Triton Pacific to manage the assets of such investors or other joint venture partners either through managed accounts, funds, or other vehicles overseen by Triton Pacific in connection with Triton Pacific's healthcare investments (hereinafter "Investments")."

(Exhibit A, Section (a) of the Placement Agreement.)

23. When the parties entered into the Placement Agreement, Triton's specific capital needs were still uncertain, and it was not clear what types of capital Triton would need to raise. The Placement Agreement was, therefore, drafted to have the widest possible scope and cover all forms of capital that Ms. Ovodenko might source. Accordingly, unlike other similar agreements where the client retains a broker for specific and well-defined capital requirement, the Placement

Agreement does not define the relevant Investments as only including a particular type of asset, such as equity; nor does it exclude any particular asset category, such as debt. Instead, the Placement Agreement uses the general and expansive term "assets" when defining the "Investments" that Ms. Ovodenko was retained to raise.

24. For Ms. Ovodenko's services, Triton agreed to pay a "Solicitation Fee." (*See* Exhibit A, Section (b) of the Placement Agreement.) The Solicitation Fee was to be paid based on the amount of Investments raised by Triton from investors that Ms. Ovodenko introduced to Triton. (*See id.*). "[F]or the first $200 million of Investment," the Solicitation Fee equals "two percent (2%) of the amount of each such Investment or portion thereof." (*Id.*)

25. The Placement Agreement has a term of twenty-four (24) months. (Exhibit A, Section (p) of the Placement Agreement.)

**<u>Triton Continues its Relationship with Ms. Ovodenko on the Same Terms</u>**

26. After twenty-four months passed, the parties continued their relationship on exactly the same terms as before. At no point did Triton or Mr. Davis ever inform Ms. Ovodenko, either orally or in writing, that Triton considered the Placement Agreement terminated or that any of its terms had changed. On the contrary, the functional day-to-day business relationship between Triton and Ms. Ovodenko remained unchanged, and Triton continued to behave in a manner entirely consistent with its course of conduct since 2018. As a result, Ms. Ovodenko reasonably believed that the legal relationship likewise continued on the same terms.

27. Triton, acting through Mr. Davis, continued to update Ms. Ovodenko about Triton's funding needs, asked Ms. Ovodenko to introduce investors to Triton who could meet those capital needs, raised capital based on Ms. Ovodenko's introductions, and paid Ms. Ovodenko a solicitation fee equal to 2% of the amount of capital that Triton raised from Mr. Ovodenko's introduction.

28. For example, on August 13, 2020, Mr. Davis emailed Ms. Ovodenko with a mid-year update outline Triton's current strategy and asked Ms. Ovodenko to "push out to investors." Ms. Ovodenko did exactly that and continued to promote Triton's projects to potential investors, and she did so with the reasonable expectation that Triton would pay her the Solicitation Fee as

promised.

29. Shortly thereafter, on or about September 3, 2020, in a telephone conversation, Mr. Davis asked Ms. Ovodenko to put together a list of all the investors that she had introduced to Triton up until that point. Ms. Ovodenko compiled a list of approximately 440 different investors that she had introduced to Triton since 2018. The list included a range of firms that provided a variety of different types of capital, including both equity and debt. Neither Mr. Davis nor anyone else affiliated with Triton ever expressed any concern or issue with debt providers being included among the list of investors who Ms. Ovodenko had introduced to Triton.

30. For the next several years, Ms. Ovodenko worked tirelessly to support Triton, continuing to bring new investors to Mr. Davis for a variety of different deals. One such deal that Ms. Ovodenko continued to promote was a urology buyout deal. On March 15, 2021, Ms. Ovodenko introduced a wealthy individual to Triton as a potential private investor for the urology deal. Shortly thereafter, the urology deal closed, and the private individual investor whom Ms. Ovodenko had introduced to Triton was among the investors in the urology deal.

31. While preparing for closing on the urology deal, an Associate at Triton wrote to Ms. Ovodenko on April 23, 2021, asking for her wiring instructions so Triton could “include [her] 2% payment in the funds flow.” Ms. Ovodenko provided the necessary instructions, and she was paid 2% of the amount that the private individual investor put into the urology deal.

32. Since 2018 when the Placement Agreement was negotiated, neither Ms. Ovodenko nor anyone at Triton had discussed the terms of her payment, and everyone understood that the terms remained the same. The 2% payment on the investment in the urology deal made by the private individual investor that Ms. Ovodenko had introduced to Triton was consistent with the terms of the Placement Agreement. Consequently, Ms. Ovodenko was reasonably led to believe that her work for Triton was still governed by the terms set forth in the Placement Agreement.

33. During this entire time, neither Mr. Davis nor anyone else at Triton ever told Ms. Ovodenko that the scope of her mandate, the structure of her compensation, or any other terms of her retention had changed since the Placement Agreement. As subsequent conduct would show, however, Triton had no intention of keeping its promises to Ms. Ovodenko.

34. Another investor that Ms. Ovodenko introduced to Triton in connection with the urology deal was Star Mountain Capital, an asset management firm that specializes in providing equity and debt capital. On September 30, 2020, Ms. Ovodenko introduced Star Mountain to Mr. Davis.

35. In response to the introduction, Mr. Davis told Ms. Ovodenko that he "looked this group up they [*sic*] look like solid investor for us." In the same email, Mr. Davis also stated, "[I] don't know the lead investor" on the Star Mountain side. Mr. Davis suggested that "it might help to do a call with him."

36. Star Mountain eventually decided against investing in the urology deal, but they remained on the list of approved investors that Ms. Ovodenko introduced to Triton and that Triton asked her to continue soliciting. Mr. Davis kept and regularly circulated to Ms. Ovodenko tracking sheets listing the various potential investors that Ms. Ovodenko had introduced along with a running description of the status of communications with each investor. Star Mountain remained on that list since Ms. Ovodenko's introduction; and, as Mr. Davis' notes dated October 19, 2021, for Star Mountain on his tracking sheets clearly indicated he understood that Star Mountain focused on "structured capital" and "like to do all the equity and debt."

**<u>The Integrated Pain Associates Transaction</u>**

37. Eventually Star Mountain became interested in another Triton investment deal with a pain management group known as Integrated Pain Associates. On or about August 23, 2022, as recorded in tracking sheets for the Integrated Pain Associates (or "IPA") deal, Triton and Star Mountain entered into a non-disclosure agreement for the deal.

38. On the same date, August 23, 2022, Mr. Davis emailed Ms. Ovodenko updating her on Star Mountain's involvement in the IPA deal, noting that "they could be interesting because they can play in debt and equity." By sending this communication to Ms. Ovodenko, Mr. Davis demonstrated that he understood any investment by Star Mountain would likely involve debt, and he also continued to suggest Ms. Ovodenko would be paid for Star Mountain's investment. Consequently, based on this and other similar communications, as well as Triton's past conduct, Ms. Ovodenko reasonably continued to believe that she would be paid 2% for any

capital that Triton raised from Star Mountain for the IPA deal.

39. On January 10, 2023, Triton issued a press release announcing the IPA deal. On or around that date, the deal closed with substantial equity and debt funding from Star Mountain.

40. Star Mountain was not the only investor that Ms. Ovodenko had introduced to Triton who ended up investing the in the IPA deal.

41. The same private individual who invested in the urology deal also invested in the IPA deal.

42. Furthermore, upon information and belief, another private credit fund that Ms. Ovodenko had introduced to Triton in February 2021, also invested in the IPA deal.

43. Upon information and belief, Triton raised over $100 million in capital for the IPA deal based on introductions made by Ms. Ovodenko. Accordingly, after applying the 2% solicitation fee, Ms. Ovodenko is owed over $2 million.

**Triton Reveals Its True Intention to Not Pay Ms. Ovodenko in Full.**

44. On January 17, 2023, after the IPA deal had closed, Ms. Ovodenko had a call with Mr. Davis to talk about her solicitation fee. During the call, Ms. Ovodenko followed her usual practice and took detailed notes of the conversation.

45. During that call, Mr. Davis told Ms. Ovodenko that Triton would not pay her on the debt portion of Star Mountain's investment, but only pay 2% on the equity portion, which was just a small fraction of Star Mountain's total investment.

46. Mr. Davis admitted that Ms. Ovodenko had done a lot of work for Triton over the previous five years, and the solicitation fee on the IPA deal was going to be the first reasonable payout.

47. Nevertheless, he attempted to justify Triton's refusal to pay Ms. Ovodenko in full by asserting, for the very first time, that Triton had a prior relationship with Star Mountain, so the Star Mountain introduction was not a qualified introduction under the terms of the Placement Agreement.

48. Mr. Davis, who has 25 years of experience in healthcare investing, must have known his excuse ignored the realities of how deals are funded and the importance of personal

introductions. The fact that someone at Triton may have interacted with someone from Star Mountain many years ago is not surprising, nor is it at all relevant since whatever relationship that may have existed previously was not maintained over time and none of the individuals in the prior relationship were involved in the IPA deal. Deals are funded based on having direct and personal relationships which ensure that the right person at an institution like Star Mountain reviews the deal, that they take the time to properly diligence the deal, and that they have built the trust that supports any decision to invest large amounts of capital. This personal and direct connection begins with the introduction that Ms. Ovodenko made.

49. The irrelevance of any prior interaction with Star Mountain is underscored by the fact that, in the period between Ms. Ovodenko's introduction of Star Mountain and the close of the IPA deal when her solicitation fee became due, neither Mr. Davis nor anyone else at Triton had ever informed Ms. Ovodenko that she would not be receiving her fee because Star Mountain was already known to Triton. On the contrary, Mr. Davis' communications had continually and knowingly confirmed that Star Mountain's investment in the IPA deal was the direct result of Ms. Ovodenko's introduction.

50. Mr. Davis also suggested that Triton had never hired Ms. Ovodenko to raise debt, even though his suggestion is contradicted by the terms of the Placement Agreement, his communications with Ms. Ovodenko, his own notes on Star Mountain, and Triton's own conduct in funding the deal.

51. While making Triton's excuses, Mr. Davis admitted that "there is a lot of ambiguity" in the Placement Agreement, and he suggested for the first time that it should be terminated.

52. Shortly thereafter, Triton sent Ms. Ovodenko a proposed Termination Agreement.

53. According to the Recitals in Triton's proposed Termination Agreement, Triton and Old City "are parties to that certain Placement Agent Agreement dated as of January 25, 2018, pursuant to which Old City agreed to introduce TPCP investors and join venture parties in connection with TPCP's healthcare practice."

54. Triton's proposed Termination Agreement purports to "provide for a final

accounting and payment of all monies owed by TPCP pursuant to the Placement Agent Agreement."

55. The proposed Termination Agreement also does not say that the Placement Agreement had terminated automatically on its own terms. Instead, it states that "the Parties terminated the Placement Agent Agreement," even though neither party had ever invoked or declared any termination of the agreement prior to the January 17, 2023, telephone call. In addition, the first clause of the draft Termination Agreement declares that the parties "agree the Placement Agent Agreement has been terminated and is of no further force and effect."

56. In exchange for a mutual release of all claims, the Termination Agreement offered Ms. Ovodenko a "Final Payment" of $200,000.

57. Ms. Ovodenko did not sign or otherwise accept the term of Triton's proposed Termination Agreement.

## FIRST CAUSE OF ACTION

**(Breach of Contract—Against Defendant Triton Pacific Capital Partners, LLC and DOES 1-10)**

58. Plaintiffs hereby reallege and incorporate by reference the allegations contained in each and every paragraph above as though fully set forth herein.

59. Defendant and Old City entered into the Placement Agreement, as referenced above and attached hereto as Exhibit A.

60. Both Old City and Ms. Ovodenko performed their duties under the Placement Agreement in accordance with its terms.

61. Triton has waived any termination of its obligations under the Placement Agreement through conduct consistent with an intention to waive its termination provision.

62. Triton breached the Placement Agreement, as noted herein, by failing to compensate Old City and Ms. Ovodenko in connection with the IPA deal consistent with the terms of the agreement. Specifically, Triton has refused to pay Ms. Ovodenko and Old City for (i) the debt financing provided by Star Mountain, (ii) any of the capital financing provided by the private credit fund that Ms. Ovodenko had introduced to Triton in February 2021, and (iii) any of

the capital financing provided by the individual private investor who had previously invested in the urology deal.

63. As a result of Defendant Triton's breaches of the Placement Agreement, Ms. Ovodenko and Old City have suffered actual monetary damages in an amount to be proven at trial and continues to incur damages in an amount to be proven trial, in addition to incidental and consequential damages and attorney fees and costs.

64. Ms. Ovodenko and Old City are entitled to prejudgment interest of 10% for all contractual breaches where an interest rate is unstated.

**SECOND CAUSE OF ACTION**

**(Breach of Implied in Fact Contract – Against Defendant Triton Pacific Capital Partners, LLC and DOES 1-10)**

65. Plaintiffs hereby reallege and incorporate by reference the allegations contained in each and every paragraph above as though fully set forth herein and costs.

66. Plaintiffs and Defendant Triton entered into an implied contract, the existence and terms of which were manifested by the conduct of both Plaintiffs and Defendant. The terms of the implied-in-fact contract were the same as those in the Placement Agreement. In particular, Ms. Ovodenko was tasked with raising "assets" of all kinds, including equity and debt; and Ms. Ovodenko was to receive a solicitation fee of 2% of all such assets raised by Triton from investors who had been introduced by Ms. Ovodenko.

67. Ms. Ovodenko and Old City performed their duties under the terms of the implied-in-fact contract between herself and Triton.

68. Triton breached the terms of the implied-in-fact contract, as noted herein, by failing to compensate Ms. Ovodenko and Old City in connection with the IPA deal in accordance with terms of the contract. Specifically, Triton has refused to pay for (i) the debt financing provided by Star Mountain, (ii) any of the capital financing provided by the private credit fund that Ms. Ovodenko had introduced to Triton in February 2021, and (iii) any of the capital financing provided by the individual private investor who had previously invested in the urology deal.

69. As a result of Defendant Triton's breach of the implied-in-fact contract, Ms. Ovodenko and Old City have suffered actual monetary damages in an amount to be proven at trial and continue to incur damages in an amount to be proven trial, in addition to incidental and consequential damages and attorney fees and costs.

70. Ms. Ovodenko and Old City are entitled to prejudgment interest of 10% for all contractual breaches where an interest rate is unstated.

**THIRD CAUSE OF ACTION**

**(Fraudulent Inducement [False Promise] -- Against All Defendants)**

71. Plaintiffs hereby reallege and incorporate by reference the allegations contained in each and every paragraph above as though fully set forth herein.

72. Triton and Mr. Davis made a promise to Ms. Ovodenko and Old City that, after the Placement Agreement's term expired, she would continue to be paid a solicitation fee equal to 2% of all assets, including debt financing, that Triton raised from investors introduced by Ms. Ovodenko, consistent with the terms that had been agreed upon previously in the Placement Agreement.

73. Mr. Davis and Triton made this promise through their conduct which was consistent with the previous terms of the Placement Agreement. Such conduct included Mr. Davis' continued requests that Ms. Ovodenko market its investment opportunities, including the IPA deal, to investors who provided both equity and debt, Mr. Davis' continued sharing of information related to the IPA deal and other project with Ms. Ovodenko, and Triton's payment of a solicitation fee to Ms. Ovodenko equal to 2% of the capital Triton raised from the private individual investor in connection with the urology deal.

74. The promise made by Mr. Davis and Triton was false when made; and Mr. Davis and Triton did not intend to perform this promise. In truth, although Mr. Davis and Triton knew as early as October 2020, that Star Mountain and other investors would provide debt financing, neither Mr. Davis nor Triton ever told Ms. Ovodenko that Triton did not intend to compensate her for any debt financing, even though debt was plainly within the scope of the Placement Agreement.

75. On the contrary, on August 23, 2022, Mr. Davis sent Ms. Ovodenko an email stating that Star Mountain "could be interesting as they can play in debt and equity," suggesting that Triton knew Star Mountain would provide debt financing and that Ms. Ovodenko should be paid accordingly. However, despite their previous conduct, as soon as the IPA deal closed and Star Mountain provided significant debt financing, Triton and Mr. Davis immediately disavowed the Placement Agreement, for the very first time, declaring it to have terminated and stating that it never wanted Ms. Ovodenko to help raise debt.

76. Triton and Mr. Davis intended for Ms. Ovodenko and Old City to rely on these representations so that Ms. Ovodenko would continue to raise capital for Triton.

77. Ms. Ovodenko did reasonably rely on these representations when she continued to raise capital for Triton, including but not limited to the IPA deal.

78. Triton did not perform its promise and did not pay Ms. Ovodenko or Old City for the IPA deal. In refusing to pay, Triton has declared that it would not pay for the debt portion of Star Mountain's investment in the IPA deal. Triton has also not kept its promise by refusing to pay Ms. Ovodenko and Old City for any of the capital financing provided by the private credit fund that Ms. Ovodenko had introduced to Triton in February 2021 or for any of the capital financing provided by the individual private investor who had previously invested in the urology deal.

79. Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive, fraudulent manner, entitling Plaintiffs to punitive damages against Defendants.

**<u>FOURTH CAUSE OF ACTION</u>**

**(Intentional Misrepresentation -- Against All Defendants)**

80. Plaintiffs hereby reallege and incorporate by reference the allegations contained in each and every paragraph above as though fully set forth herein.

81. Defendants Joseph Davis and Triton made implied representations of existing fact to Ms. Ovodenko and Old City that the terms of the Placement Agreement continued past January 25, 2020, that Plaintiffs were still retained by Triton to raise capital of all varieties for Triton's projects, that Star Mountain did not have a prior relationship with Triton that placed Star

Mountain outside the terms of the Placement Agreement, and that Plaintiffs would be paid 2% of all capital raised by Triton from investors that Ms. Ovodenko introduced.

82. Such representations were made through Mr. Davis' and Triton's conduct, including but not limited to Mr. Davis' continued requests that Ms. Ovodenko market Triton's investment opportunities to investors who provided both equity and debt, Mr. Davis' continued sharing of information with Ms. Ovodenko about existing projects, Mr. Davis' communications with Ms. Ovodenko regarding Star Mountain and its interest in Triton's deals, and Triton's payment of a solicitation fee to Ms. Ovodenko equal to 2% of the capital Triton raised from the private individual investor in connection with the urology deal.

83. These representations were false.

84. When making these representations, Defendants knew they were false or made them recklessly and without regard for their truth.

85. Mr. Davis and Triton intended for Ms. Ovodenko and Old City to rely on their representations by having Ms. Ovodenko continue to raise capital for Triton.

86. Ms. Ovodenko and Old City did reasonably rely on these representations when Ms. Ovodenko continued to raise capital for Triton, including but not limited to the IPA deal.

87. As a direct and proximate result of Plaintiffs' reliance on Mr. Davis' and Triton's false representations, Plaintiffs were harmed in the form unpaid solicitation fees equal to 2% of all forms of capital financing, including debt, that was raised in connection with the IPA deal from investors introduced to Triton and Mr. Davis by Ms. Ovodenko, consistent with the terms of the Placement Agreement.

88. Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive, fraudulent manner, entitling Plaintiffs to punitive damages against Defendants.

**FIFTH CAUSE OF ACTION**

**(Negligent Misrepresentation -- Against All Defendants)**

89. Plaintiffs hereby reallege and incorporate by reference the allegations contained in each and every paragraph above as though fully set forth herein.

90. Defendants Joseph Davis and Triton made implied representations of existing fact

to Ms. Ovodenko and Old City that the terms of the Placement Agreement continued past January 25, 2020, that Plaintiffs was still retained by Triton to raise capital of all varieties for Triton's projects, that Star Mountain did not have a prior relationship with Triton that placed Star Mountain outside the terms of the Placement Agreement, and that Plaintiffs would be paid 2% of all capital raised by Triton from investors that Ms. Ovodenko introduced.

91. Such representations were made through Mr. Davis' and Triton's conduct, including but not limited to Mr. Davis' continued requests that Ms. Ovodenko market Triton's investment opportunities to investors who provided both equity and debt, Mr. Davis' continued sharing of information with Ms. Ovodenko about existing projects, Mr. Davis' communications with Ms. Ovodenko regarding Star Mountain and its interest in Triton's deals, and Triton's payment of a solicitation fee to Ms. Ovodenko equal to 2% of the capital Triton raised from the private individual investor in connection with the urology deal.

92. These representations were not true.

93. When making these representations, Defendants had no reasonable grounds for believing they were true.

94. Mr. Davis and Triton intended for Plaintiffs to rely on their representations by having Ms. Ovodenko continue to raise capital for Triton.

95. Ms. Ovodenko and Old City did reasonably rely on these representations when Ms. Ovodenko continued to raise capital for Triton, including but not limited to the IPA deal.

96. As a direct and proximate result of Plaintiffs' reliance on Mr. Davis' and Triton's false representations, Plaintiffs were harmed in the form unpaid solicitation fees equal to 2% of all forms of capital financing, including debt, that was raised in connection with the IPA deal from investors introduced to Triton and Mr. Davis by Ms. Ovodenko, consistent with the terms of the Placement Agreement.

**SIXTH CAUSE OF ACTION**

**(Unjust Enrichment -- Against Defendant Triton Pacific Capital Partners, LLC and DOES 1-10)**

97. Plaintiffs hereby reallege and incorporate by reference the allegations contained in

each and every paragraph above as though fully set forth herein.

98. Triton received a benefit in the form of Ms. Ovodenko's work over the course of five years, including but not limited to introductions to hundreds of potential investors, extensive marketing and promotion of Triton's healthcare investments, and significant capital funding of the IPA deal and other transactions.

99. The receipt of this benefit came at Ms. Ovodenko's and Old City's expense who expended thousands of hours of work over five years in service of Triton's business needs.

100. Triton has not, however, fully compensated Ms. Ovodenko or Old City for this work.

101. Thus, by Triton's wrongful acts and omissions, Triton was unjustly enriched at the expense of Ms. Ovodenko and Old City, and it would be unjust or unfair for Triton to retain these benefits without full and fair compensation to Plaintiffs.

## PRAYER FOR RELIEF

102. WHEREFORE, Plaintiffs pray for judgment as follows:

a) For general and compensatory damages in an amount to be determined at trial;

b) punitive damages in the amount to be proven at trial for Defendants' willful and malicious conduct;

c) attorneys' fees and costs to the maximum extent permitted under the law or any applicable contract;

d) pre-judgment and post-judgment interest in the maximum amounts provided by law;

e) such other and further relief as this Court deems just and proper.

ADDITIONALLY, plaintiffs, Olga Ovodenko and Old City, demand trial of this matter by jury. The amount demanded exceeds $25,000.00 (Government Code §72055).

Dated: June 5, 2023

Respectfully Submitted,

THE VORA LAW FIRM, P.C.

BY:____________________________
JEFFREY A. ATTEBERRY
*Attorneys for Plaintiff Olga Ovodenko and Old City Securities, LLC*

# Exhibit A

# PLACEMENT AGREEMENT

**THIS PLACEMENT AGREEMENT** (the "**Agreement**") is made as of January 25, 2018 (the "**Execution Date**"),

**BY AND BETWEEN:**

**TRITON PACIFIC CAPITAL PARTNERS, LLC**
("**Triton Pacific**")

and

**OLD CITY SECURITIES LLC**
(together with its affiliates, "**Old City**")

(each individually, a "**Party**" and collectively, the "**Parties**")

The purpose of this Agreement is to set forth certain understandings between Triton Pacific and Old City.

AGREEMENT TERMS:

a) Triton Pacific wishes to engage Old City, an SEC-registered broker-dealer, on an non-exclusive basis to introduce investors and joint venture partners to Triton Pacific for the purpose of enabling Triton Pacific to manage the assets of such investors or joint venture partners either through managed accounts, funds, or other vehicles overseen by Triton Pacific in connection with Triton Pacific's healthcare investments (hereinafter "**Investments**"). Old City's assistance will include the following services:

(i) the preparation, development and review of marketing materials for evaluation by Old City Investors;

(ii) organizing practice mock meetings focused on (1) making the case/why now, (2) describing the competitive landscape and key differentiation points, (3) market size and potential, (4) fielding anticipated Old City Investor inquiries, concerns and objections, and (5) discussion of exit strategies;

(iii) identifying and categorizing Old City Investors by type, geography and opportunity;

(iv) traveling to select investor meetings as requested by Triton Pacific;

(v) generally managing communication and interaction with Old City Investors introduced to Triton Pacific by Old City,

(vi) proactively market Triton Pacific to Old City Investors, including: (1) working with Triton Pacific to develop a go-to-market strategy and building marketing materials; (ii) arranging and executing road shows, conferences, and following up with Old City Investors; and (3) leveraging Old City's extensive capital provider relationships to obtain funds for Triton Pacific;

(vii) follow-up marketing activities including, without limitation, follow up calls and email to Old City Investors, managing and negotiating ,subject to Triton Pacific direction, the due diligence process, non-disclosure agreements, and electronic data room for Old City Investors, organizing additional conferences and road shows, scheduling periodic update calls with Old City Investors;

(viii) provide monthly reports to Triton Pacific regarding updates on marketing initiatives, feedback from Old City Investors, travel and conference planning, updating investors on regulatory/macro view, and adjustments to timeline; and

(ix) Olga Ovodenko will be the key contact for Triton Pacific and will be primarily responsible for the aforementioned services.

b) Triton Pacific shall pay Old City solicitation fees (hereinafter "**Solicitation Fees**") in respect of any investors or joint venture partners identified pursuant to Paragraph (c) below that are introduced to Triton Pacific by Old City and for whom Old City facilitates a face-to-face meeting or conference call among Triton Pacific and such Old City Investor (hereinafter "**Old City Investors**") consisting of, (i) for the first $200 million of Investments by Old City Investors, a one-time cash fee for each such Investment or portion thereof equivalent to two percent (2.0%) of the amount of each such Investment or portion thereof, and (ii) for the second $200 million of Investments by Old City Investors, a one-time cash fee for each such Investment or portion thereof equivalent to one percent (1%) of the amount of each such investment or portion thereof, and (iii) thereafter (beyond $400 million), a one-time cash fee for each such Investment or portion thereof equivalent to one-half of one percent (0.5%) of the amount of each such Investment or portion thereof. Such Solicitation Fees shall be payable to Old City in eight (8) equal quarterly installments with the first of such installments being due within ten (10) days of Triton Pacific's receipt of its management fees in connection with the applicable Investment being made.

c) An initial list of approved prospective Old City Investors as of the Execution Date is included on Appendix A attached to this Agreement, and Old City may present in

writing additional names of proposed Old City Investors to Triton Pacific for approval by Triton Pacific in writing from time-to-time after the Execution Date. Solicitation Fees shall be payable for Old City Investors included on the Appendix A attached hereto, or that Triton Pacific has approved in writing, including via e-mail, after the Execution Date.

d) Old City shall be entitled to receive Solicitation Fees in respect of Investments by an Old City Investor made at any point in time, including after the termination of this Agreement, provided that such Old City Investor was introduced to Triton Pacific by Old City during the term of this Agreement. Notwithstanding the foregoing and anything to the contrary herein, Old City and Triton Pacific acknowledge and agree that, beginning at the point in time when Triton Pacific has offered Old City Investors (who were introduced to Triton Pacific by Old City during the term of this Agreement) Potential Investments (defined below), which, in the aggregate, equal or exceed $200 million of Investment opportunity, a tail period shall be applied whereby, for Investments made after such point in time, Old City shall only be entitled to receive Solicitation Fees in respect of Investments that are made by an Old City Investor within two (2) years after the initial date on which such Old City Investor made its initial Investment with Triton Pacific. For the avoidance of doubt, this time limitation shall not affect Triton Pacific's obligation to pay Solicitation Fees in respect of Investments that were made prior to the end of any such tail period, including any payments of such Solicitation Fees that pursuant to Paragraph (b) above would have quarterly installment payments falling after the end of the tail period. For purposes herein, "**Potential Investments**" means a letter of intent or term sheet that has been memorialized in writing and fully executed by Triton Pacific and the other parties thereto.

e) Investors who have been introduced directly to Triton Pacific by an Old City Investor and who make an Investment shall themselves be deemed an Old City Investor for purposes of calculating the Solicitation Fees, unless Triton Pacific had a demonstrable prior relationship with such party. Triton Pacific will notify Old City in writing (including via e-mail) within 30 business days of learning that a potential investor was referred to Triton Pacific by an Old City Investor.

f) Triton Pacific agrees to pay Old City a $40,000 retainer, payable in six (6) equal monthly installments during the first six (6) months of this Agreement, in connection with the services described hereunder. Monthly retainer payments already made to Old City may be fully credited by Triton Pacific against Solicitation Fees earned by and owed to Old City hereunder, although retainer payments are not reimbursable should Solicitation Fees earned by Old City ultimately not exceed retainer payments made hereunder.

g) Triton Pacific will reimburse Old City for all reasonable T&E expenses incurred in connection with the services described herein, although pre-approval in writing by Triton Pacific is required for any expenses exceeding $500.

h) Triton Pacific and Old City represent that each of them has, and will have at all times during the term of their agreement, all governmental licenses, permits, consents, orders, approvals and other authorizations necessary by each to carry on its business, including, in the case of Old City, appropriate broker-dealer registrations. Triton Pacific represents that all offering documents and promotional materials it shall provide Old City and/or Old City Investors do not and will not contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make the statements therein not misleading.

i) Triton Pacific shall, upon the reasonable request of Old City, provide Old City (or a representative of Old City) with reasonable access to all of Triton Pacific's books and records which pertain to the calculation of the Solicitation Fees, solely for the purpose of enabling Old City to verify the accuracy of the Solicitation Fees paid or payable to Old City, subject to reasonable confidentiality undertakings by Old City.

j) During the term of this engagement, Triton Pacific shall make a reasonable effort to copy Old City on all material e-mail communication between Triton Pacific (or any affiliated individual or entity) and an Old City Investor, or forward or notify Old City of such communication, until the time that such investor makes an Investment.

k) Triton Pacific and Old City agree to indemnify each other for third party damages if such damages are incurred through a breach of any of the representations, warranties or covenants of the indemnifying party, or any gross negligence, willful misconduct or the violation of any law or regulation by the indemnifying party.

l) Except as and to the extent required by law, neither Party shall disclose or use any confidential information of the other Party other than in connection with evaluating the relationship proposed in this Agreement. The identity and contact information of all Old City Investors and proposed Old City Investors shall be considered confidential information of Old City.

m) This Agreement shall be construed and controlled by the laws of the State of California, without giving effect to its choice of law provisions. Any dispute or disagreement between the Parties in connection with the provisions hereof shall be determined in a court of competent jurisdiction within the State of California, and the Parties hereby

consent to venue and personal jurisdiction in the state and federal courts in Los Angeles County, California.

n) The obligation of Triton Pacific and/or any of its successors or assigns to compensate Old City as described herein shall not be affected by (i) any change in ownership, management, control, organizational structure or compensation structure of Triton Pacific or any of its respective successors or assigns, or (ii) the redemption by any Old City Investor from a vehicle managed by Triton Pacific and subsequent investment by such investor or an affiliate thereof into another vehicle (whether a fund, managed account, or other structure) managed by Triton Pacific, or any successors or assigns thereof, under a similar investment strategy.

o) This Agreement incorporates the entire understanding of the parties with respect to this engagement of Old City by Triton Pacific, and supersedes all previous written or oral agreements or understandings regarding such engagement.

p) The term of this Agreement shall be for a period of twenty-four (24) months, although after four (4) months from the date hereof either Party may terminate this Agreement upon ten (10) days' prior written notice to the other Party.

**[Signature Page Follows]**

IN WITNESS WHEREOF, the Parties have executed and delivered this Agreement as of the Execution Date.

OLD CITY SECURITIES LLC

By:____________________________
Name: Seth Damski
Title: Managing Member

TRITON PACIFIC
CAPITAL PARTNERS, LLC

By:____________________________
Name: Joseph I. Davis
Title: Managing Partner

**CM-010**

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
The Vora Law Firm, P.C.; Nilay Vora (SBN 268339); Jeffrey Atteberry (SBN 266728)
201 Santa Monica Blvd., Suite 300, Santa Monica, California 90401
TELEPHONE NO.: (424) 258-5190 FAX NO. *(Optional):*
E-MAIL ADDRESS: nvora@voralaw; jatteberry@voralaw.com
ATTORNEY FOR *(Name):* Olga Ovodenko and Old City Securities LLC

*FOR COURT USE ONLY*

**Electronically FILED by Superior Court of California, County of Los Angeles 6/05/2023 3:02 PM David W. Slayton, Executive Officer/Clerk of Court, By D. Williams, Deputy Clerk**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles**
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District (Stanley Mosk)

CASE NAME:
Olga Ovodenko et al. v. Triton Pacific Capital Partners, LLC, Joseph Davis, and Does 1-10

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: 23STCV12880 |
|---|---|---|---|
| [x] **Unlimited** (Amount demanded exceeds $25,000) | [ ] **Limited** (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [X] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [x] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [x] punitive
4. Number of causes of action *(specify):* *6*
5. This case [ ] is [x] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: June 5, 2023

Jeffrey Atteberry
(TYPE OR PRINT NAME)

(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

| SHORT TITLE | CASE NUMBER |
|---|---|
| Ovodenko et al. v. Triton Pacific Capital Partners, et al. | |

# CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION

## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Courthouse Location (Column C) | |
|---|---|
| 1. Class Actions must be filed in the Stanley Mosk Courthouse, Central District. | 7. Location where petitioner resides. |
| 2. Permissive filing in Central District. | 8. Location wherein defendant/respondent functions wholly. |
| 3. Location where cause of action arose. | 9. Location where one or more of the parties reside. |
| 4. Location where bodily injury, death or damage occurred. | 10. Location of Labor Commissioner Office. |
| 5. Location where performance required, or defendant resides. | 11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection). |
| 6. Location of property or permanently garaged vehicle. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ 2201 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | Uninsured Motorist (46) | ☐ 4601 Uninsured Motorist – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | Other Personal Injury/ Property Damage/ Wrongful Death (23) | ☐ 2301 Premise Liability (e.g., dangerous conditions of property, slip/trip and fall, dog attack, etc.) | 1, 4 |
| | | ☐ 2302 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, battery, vandalism, etc.) | 1, 4 |
| | | ☐ 2303 Intentional Infliction of Emotional Distress | 1, 4 |
| | | ☐ 2304 Other Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | | ☐ 2305 Elder/Dependent Adult Abuse/Claims Against Skilled Nursing Facility | 1, 4 |
| | | ☐ 2306 Intentional Conduct – Sexual Abuse Case (in any form) | 1, 4 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| Ovodenko et al. v. Triton Pacific Capital Partners, et al. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| | | ☐ 2307 Construction Accidents | 1, 4 |
| | | ☐ 2308 Landlord – Tenant Habitability (e.g., bed bugs, mold, etc.) | 1, 4 |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | Product Liability (24) | ☐ 2401 Product Liability (not asbestos or toxic/ environmental) | 1, 4 |
| | | ☐ 2402 Product Liability – Song-Beverly Consumer Warranty Act (CA Civil Code §§1790-1795.8) (Lemon Law) | 1, 3, 5 |
| | Medical Malpractice (45) | ☐ 4501 Medical Malpractice – Physicians & Surgeons | 1, 4 |
| | | ☐ 4502 Other Professional Health Care Malpractice | 1, 4 |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ 0701 Other Commercial/Business Tort (not fraud or breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ 0801 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ 1301 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ 1601 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ 2501 Legal Malpractice | 1, 2, 3 |
| | | ☐ 2502 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ 3501 Other Non-Personal Injury/Property Damage Tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ 3601 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ 1501 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ 1502 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract / Warranty (06) (not insurance) | ☐ 0601 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ 0602 Contract/Warranty Breach – Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ 0603 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ 0604 Other Breach of Contract/Warranty (no fraud/ negligence) | 1, 2, 5 |
| | | ☐ 0605 Breach of Rental/Lease Contract (COVID-19 Rental Debt) | 2, 5 |
| | Collections (09) | ☐ 0901 Collections Case – Seller Plaintiff | 5, 6, 11 |
| | | ☐ 0902 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ 0903 Collections Case – Purchased Debt (charged off consumer debt purchased on or after January 1, 2014) | 5, 6, 11 |
| | | ☐ 0904 Collections Case – COVID-19 Rental Debt | 5, 11 |
| | Insurance Coverage (18) | ☐ 1801 Insurance Coverage (not complex) | 1, 2, 5, 8 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| Ovodenko et al. v. Triton Pacific Capital Partners, et al. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Contract** (Continued) | Other Contract (37) | ☑ 3701 Contractual Fraud | 1, (2), 3, 5 |
| | | ☐ 3702 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ 3703 Other Contract Dispute (not breach/insurance/fraud/ negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/ Inverse Condemnation (14) | ☐ 1401 Eminent Domain/Condemnation<br>Number of Parcels __________ | 2, 6 |
| | Wrongful Eviction (33) | ☐ 3301 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ 2601 Mortgage Foreclosure | 2, 6 |
| | | ☐ 2602 Quiet Title | 2, 6 |
| | | ☐ 2603 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer – Commercial (31) | ☐ 3101 Unlawful Detainer – Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Residential (32) | ☐ 3201 Unlawful Detainer – Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Post Foreclosure (34) | ☐ 3401 Unlawful Detainer – Post Foreclosure | 2, 6, 11 |
| | Unlawful Detainer – Drugs (38) | ☐ 3801 Unlawful Detainer – Drugs | 2, 6, 11 |
| **Judicial Review** | Asset Forfeiture (05) | ☐ 0501 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ 1101 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ 0201 Writ – Administrative Mandamus | 2, 8 |
| | | ☐ 0202 Writ – Mandamus on Limited Court Case Matter | 2 |
| | | ☐ 0203 Writ – Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ 3901 Other Writ/Judicial Review | 2, 8 |
| | | ☐ 3902 Administrative Hearing | 2, 8 |
| | | ☐ 3903 Parking Appeal | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ 0301 Antitrust/Trade Regulation | 1, 2, 8 |
| | Asbestos (04) | ☐ 0401 Asbestos Property Damage | 1, 11 |
| | | ☐ 0402 Asbestos Personal Injury/Wrongful Death | 1, 11 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| Ovodenko et al. v. Triton Pacific Capital Partners, et al. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Provisionally Complex Litigation** (Continued) | Construction Defect (10) | ☐ 1001 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ 4001 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ 2801 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ 3001 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ 4101 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ 2001 Sister State Judgment | 2, 5, 11 |
| | | ☐ 2002 Abstract of Judgment | 2, 6 |
| | | ☐ 2004 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ 2005 Petition/Certificate for Entry of Judgment Unpaid Tax | 2, 8 |
| | | ☐ 2006 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ 2701 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (not specified above) (42) | ☐ 4201 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ 4202 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ 4203 Other Commercial Complaint Case (non-tort/noncomplex) | 1, 2, 8 |
| | | ☐ 4204 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ 2101 Partnership and Corporation Governance Case | 2, 8 |
| | Other Petitions (not specified above) (43) | ☐ 4301 Civil Harassment with Damages | 2, 3, 9 |
| | | ☐ 4302 Workplace Harassment with Damages | 2, 3, 9 |
| | | ☐ 4303 Elder/Dependent Adult Abuse Case with Damages | 2, 3, 9 |
| | | ☐ 4304 Election Contest | 2 |
| | | ☐ 4305 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ 4306 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ 4307 Other Civil Petition | 2, 9 |

| SHORT TITLE Ovodenko et al. v. Triton Pacific Capital Partners, et al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address, which is the basis for the filing location including zip code. (No address required for class action cases.)

| REASON: ☐ 1. ☑ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11 | | | ADDRESS: 6701 Center Drive West, Suite 1450 |
|---|---|---|---|
| CITY: Los Angeles | STATE: CA | ZIP CODE: 90045 | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the Central District of the Superior Court of California, County of Los Angeles [Code of Civ. Proc., 392 et seq., and LASC Local Rule 2.3(a)(1)(E)]

Dated: June 5, 2023

(SIGNATURE OF ATTORNEY/FILING PARTY

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form LASC CIV 109 (01/23).
5. Payment in full of the filing fee, unless there is a court order for waiver, partial or schedule payments.
6. A signed order appointing a Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court to issue a Summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the Summons and Complaint, or other initiating pleading in the case.

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF LOS ANGELES** | Reserved for Clerk's File Stamp<br><br>**FILED**<br>Superior Court of California<br>County of Los Angeles<br>06/05/2023<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: D. Williams Deputy |
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | |
| **NOTICE OF CASE ASSIGNMENT**<br>**UNLIMITED CIVIL CASE** | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>23STCV12880 |

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✔ | Lia Martin | 16 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record on 06/07/2023 (Date)

David W. Slayton, Executive Officer / Clerk of Court

By D. Williams, Deputy Clerk

# INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

**APPLICATION**
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

**PRIORITY OVER OTHER RULES**
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

**CHALLENGE TO ASSIGNED JUDGE**
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

**TIME STANDARDS**
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

**COMPLAINTS**
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

**CROSS-COMPLAINTS**
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

**STATUS CONFERENCE**
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

**FINAL STATUS CONFERENCE**
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

**SANCTIONS**
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

**Class Actions**
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

***Provisionally Complex Cases**
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

Superior Court of California, County of Los Angeles

# ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

## What is ADR?

ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

## Advantages of ADR

- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties): Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

## Disadvantages of ADR

- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:** ADR does not provide a public trial or decision by a judge or jury.

## Main Types of ADR

1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may <u>not</u> be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

## How to Arrange Mediation in Los Angeles County

Mediation for **civil cases** is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**
If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

- **ADR Services, Inc.** Assistant Case Manager Janet Solis, janet@adrservices.com (213) 683-1600
- **Mediation Center of Los Angeles** Program Manager info@mediationLA.org (833) 476-9145

**These organizations cannot accept every case and they may decline cases at their discretion.** They may offer online mediation by video conference for cases they accept. Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

**NOTE: The Civil Mediation Vendor Resource List program does not accept family law, probate, or small claims cases.**

b. **Los Angeles County Dispute Resolution Programs.** Los Angeles County-funded agencies provide mediation services on the day of hearings in small claims, unlawful detainer (eviction), civil harassment, and limited civil (collections and non-collection) cases.
https://dcba.lacounty.gov/countywidedrp/

**Online Dispute Resolution (ODR).** Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case. https://my.lacourt.org/odr/

c. Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

3. **Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit https://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC):** MSCs are ordered by the Court and are often held close to the trial date or on the day of trial. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit https://www.lacourt.org/division/civil/CI0047.aspx

Los Angeles Superior Court ADR website: https://www.lacourt.org/division/civil/CI0109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

# VOLUNTARY EFFICIENT LITIGATION STIPULATIONS

**Superior Court of California**
**County of Los Angeles**

**Los Angeles County**
**Bar Association**
**Litigation Section**

**Los Angeles County**
**Bar Association Labor and**
**Employment Law Section**

**Consumer Attorneys**
**Association of Los Angeles**

**Southern California**
**Defense Counsel**

**Association of**
**Business Trial Lawyers**

**California Employment**
**Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

**◆Los Angeles County Bar Association Litigation Section◆**

**◆ Los Angeles County Bar Association Labor and Employment Law Section◆**

**◆Consumer Attorneys Association of Los Angeles◆**

**◆Southern California Defense Counsel◆**

**◆Association of Business Trial Lawyers◆**

**◆California Employment Lawyers Association◆**

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
| --- | --- | --- |
| TELEPHONE NO.: FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | | CASE NUMBER: |

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at **[www.lacourt.org](http://www.lacourt.org)** under "*Civil*" and then under "*General Information*").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to ____________________ (INSERT DATE) for the complaint, and ____________________ (INSERT DATE) for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

____________________ (TYPE OR PRINT NAME) ➢ ____________________ (ATTORNEY FOR PLAINTIFF)

Date:

____________________ (TYPE OR PRINT NAME) ➢ ____________________ (ATTORNEY FOR DEFENDANT)

Date:

____________________ (TYPE OR PRINT NAME) ➢ ____________________ (ATTORNEY FOR DEFENDANT)

Date:

____________________ (TYPE OR PRINT NAME) ➢ ____________________ (ATTORNEY FOR DEFENDANT)

Date:

____________________ (TYPE OR PRINT NAME) ➢ ____________________ (ATTORNEY FOR ____________________)

Date:

____________________ (TYPE OR PRINT NAME) ➢ ____________________ (ATTORNEY FOR ____________________)

Date:

____________________ (TYPE OR PRINT NAME) ➢ ____________________ (ATTORNEY FOR ____________________)



Print Save Clear

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **STIPULATION – DISCOVERY RESOLUTION** | | CASE NUMBER: |

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | CASE NUMBER: |
|---|---|

iii. Be filed within two (2) court days of receipt of the Request; and

iv. Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c. No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d. If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e. If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4. If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5. The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

   It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6. Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7. Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|

**The following parties stipulate:**

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR PLAINTIFF)

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR DEFENDANT)

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR DEFENDANT)

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR DEFENDANT)

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR ____________________________)

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR ____________________________)

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR ____________________________)

Print Save Clear

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | | CASE NUMBER: |

1. This document relates to:

   ☐ Request for Informal Discovery Conference
   ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: ________________ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: ________________ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, briefly describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, briefly describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: <br> E-MAIL ADDRESS (Optional): <br> ATTORNEY FOR (Name): | FAX NO. (Optional): | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **STIPULATION AND ORDER – MOTIONS IN LIMINE** | | CASE NUMBER: |

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least ____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|

**The following parties stipulate:**

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR PLAINTIFF)

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR DEFENDANT)

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR DEFENDANT)

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR DEFENDANT)

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR ______________________)

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR ______________________)

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR ______________________)

**THE COURT SO ORDERS.**

Date: ______________________

JUDICIAL OFFICER

Print Save Clear

FILED
LOS ANGELES SUPERIOR COURT
MAY 11 2011
JOHN A. CLARKE, CLERK
N. Navarro
BY NANCY NAVARRO, DEPUTY

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

| | |
|---|---|
| General Order Re Use of Voluntary Efficient Litigation Stipulations | ORDER PURSUANT TO CCP 1054(a), EXTENDING TIME TO RESPOND BY 30 DAYS WHEN PARTIES AGREE TO EARLY ORGANIZATIONAL MEETING STIPULATION |

Whereas the Los Angeles Superior Court and the Executive Committee of the Litigation Section of the Los Angeles County Bar Association have cooperated in drafting "Voluntary Efficient Litigation Stipulations" and in proposing the stipulations for use in general jurisdiction civil litigation in Los Angeles County;

Whereas the Los Angeles County Bar Association Litigation Section; the Los Angeles County Bar Association Labor and Employment Law Section; the Consumer Attorneys Association of Los Angeles; the Association of Southern California Defense Counsel; the Association of Business Trial Lawyers of Los Angeles; and the California Employment Lawyers Association all "endorse the goal of promoting efficiency in litigation, and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases;"

Whereas the Early Organizational Meeting Stipulation is intended to encourage cooperation among the parties at an early stage in litigation in order to achieve litigation efficiencies;

Whereas it is intended that use of the Early Organizational Meeting Stipulation will promote economic case resolution and judicial efficiency;

Whereas, in order to promote a meaningful discussion of pleading issues at the Early Organizational Meeting and potentially to reduce the need for motions to challenge the pleadings, it is necessary to allow additional time to conduct the Early Organizational Meeting before the time to respond to a complaint or cross complaint has expired;

Whereas Code of Civil Procedure section 1054(a) allows a judge of the court in which an action is pending to extend for not more than 30 days the time to respond to a pleading "upon good cause shown";

Now, therefore, this Court hereby finds that there is good cause to extend for 30 days the time to respond to a complaint or to a cross complaint in any action in which the parties have entered into the Early Organizational Meeting Stipulation. This finding of good cause is based on the anticipated judicial efficiency and benefits of economic case resolution that the Early Organizational Meeting Stipulation is intended to promote.

IT IS HEREBY ORDERED that, in any case in which the parties have entered into an Early Organizational Meeting Stipulation, the time for a defending party to respond to a complaint or cross complaint shall be extended by the 30 days permitted

by Code of Civil Procedure section 1054(a) without further need of a specific court order.

DATED: May 11, 2011

Carolyn B. Kuhl, Supervising Judge of the Civil Departments, Los Angeles Superior Court